# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48045

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

ANNA ANNETTE MALLORY,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Filed: October 28, 2021

Melanie Gagnepain, Clerk

SUBSTITUTE OPINION
THE COURT'S PRIOR OPINION
DATED SEPTEMBER 21, 2021,
IS HEREBY WITHDRAWN

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

---

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Scott Wayman, District Judge.

Orders awarding restitution, <u>affirmed</u>.

Greg D. Horne; Richard K. Kuck, PLLC, Coeur d'Alene, for appellant. Richard K. Kuck argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

---

BRAILSFORD, Judge

Anna Annette Mallory appeals from the district court's orders for restitution. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Mallory worked as a secretary for the Hayden Fraternal Order of Eagles, also known as the Hayden Lake Eagles. After Mallory resigned, the Hayden Lake Eagles conducted an audit and discovered Mallory had possibly embezzled more than $49,000. A subsequent police investigation supported the Hayden Lake Eagles' suspicions. During that investigation, the police also discovered that Mallory had purchased a lawn mower using a check from the Hayden

1

Lake Eagles' account. After the police contacted Mallory about the investigation, she pawned the lawn mower for $150.

In May 2019, the State charged Mallory with grand theft, Idaho Code § 18-2403(1), for embezzling funds from the Hayden Lake Eagles and with burglary, I.C. § 18-1401, for pawning the lawn mower. Further, the State alleged Mallory was a habitual offender, I.C. § 19-2514. In September 2019, the State filed a restitution memorandum requesting $7,228.94 on behalf of the Hayden Lake Eagles and $10,000 on behalf of Liberty Mutual Insurance, which provided the Hayden Lake Eagles' coverage for employee dishonesty. Subsequently, the State amended the restitution memorandum to request $150 on behalf of the pawnshop.

In December 2019, Mallory signed a pretrial settlement offer, agreeing to plead guilty to the burglary charge for pawning the lawn mower. In exchange, the State agreed to dismiss the grand theft charge and the habitual offender allegation. Regarding restitution, the pretrial settlement offer which Mallory signed stated, "Pay restitution/reimbursement: If applicable per statute: TBD to Hayden Lake Eagles."

During a sentencing hearing in February 2020, the State asked for restitution as set forth in its amended restitution memorandum. Mallory opposed the request, contending that "there wasn't the evidence to prove those other charges" (apparently referring to the grand theft charge) and that the parties had agreed to address the issue of restitution at "a later date." The district court noted that the State was requesting restitution for the Hayden Lake Eagles and their insurance company and that most of the State's request related to the grand theft charge. The court quoted I.C. § 19-5304(9), which provides that "the court may, with the consent of the parties, order restitution to the victims, and/or any other person or entity, for economic loss or injury for crimes which are not adjudicated or are not before the court." Because the court had not received a copy of the written plea agreement, it continued the sentencing hearing and encouraged the parties to reach an agreement on restitution.

In May 2020, the district court held another sentencing hearing. At the beginning of that hearing, the court addressed the issue of restitution and stated that "the agreement of the parties as reflected in the pretrial settlement offer required [Mallory] to make restitution to the Hayden Lake Eagles and that the defense agrees to that." Further, the court stated that the State's restitution memoranda indicated the State believed "restitution should be paid to the Hayden Lake Eagles, even though the charges of grand theft related to that conduct have been

2

dismissed." In response, Mallory's counsel stated that Mallory would not consent to restitution for "alleged crimes that were dropped crimes"; she was "not agreeing to restitution for something that was never proven"; and she was only "agreeable to pay restitution as [it] relates to the lawn mower."

The prosecutor then stated that Mallory's position indicated "there was never a meeting of the minds" on the issue of restitution, and therefore the plea agreement was "no longer valid." The district court agreed, stating:

> [Mallory] entered into a plea agreement to plead guilty to one charge and dismiss the other, and there was not a meeting of the minds with regard to the restitution on the dismissed count, which then finds that the plea agreement that was entered into really isn't a plea agreement at all since there was never any agreement definitively put down in writing that the parties agreed upon. And so that leaves the parties in a position of deciding how they would like to proceed.
> . . . .
> And it boils down to this. There is no plea agreement. If the State wants to go forward and pursue those other charges, they are perfectly free to do that. If [Mallory] wants to have her guilty plea on the burglary charge stand and go to sentencing on that, we can do that. But the statute does not allow me to award restitution to victims who are not the victims of the adjudicated conduct.

Then, the district court expressly inquired whether Mallory consented to restitution for the Hayden Lake Eagles:

> Does [Mallory] consent to allowing the court to determine the amount of restitution that would be payable to the Hayden Lake Eagles for any economic loss or injury even though those crimes, alleged crimes, were not adjudicated and are not before the court?

Responding to this question, Mallory's counsel stated, "No. . . . We do not consent." The court then asked how the State intended to proceed absent Mallory's consent, and the prosecutor stated, "I would want to make it very clear so that there's no confusion later that [Mallory] understands, I will re-file the grand theft charge and seek restitution for the entire criminal conduct that has been disclosed."

At that point, Mallory's counsel requested "a minute" "to discuss things privately" with Mallory, and the district court recessed. After that recess, the following exchange occurred between the court and Mallory's counsel:

> [The Court]: [Y]ou've taken a few minutes to talk with [Mallory]. What does [Mallory] wish to do today?

3

[Counsel]:     [W]hat we would be agreeable to doing is we'll let the plea remain and we will consent to allowing the court to determine the amount of restitution.

. . . .

[W]e are consenting to the court in making a determination as to restitution, and that would include her charge of burglary for the lawn mower and, as the court deems appropriate, other charges that were dismissed.

. . . .

[The Court]:   All right. So let's make sure I'm clear on this, [counsel]. [Mallory] is willing to consent to the court determining the restitution amount for economic loss or injury for the Hayden Lake Eagles arising out of the conduct that was charged in the count in the complaint where they were named as the alleged victim which has now been dismissed and they are no longer before the court; is that correct?

[Counsel]:     That is correct.

Following another recess, the district court held an evidentiary hearing to determine the amount of restitution, including for the Hayden Lake Eagles. That hearing spanned two days, during which the State called two supporting witnesses to testify about the funds missing from the Hayden Lake Eagles, including the chairman of the Hayden Lake Eagles' financial committee. Mallory also testified. At the hearing's conclusion, the court indicated it would accept further evidence regarding restitution at a subsequent sentencing hearing.[1] The minutes of that sentencing hearing, however, indicate that the parties did not provide further evidence but did present argument about the restitution issues. Further, the minutes indicate the court made findings of fact and conclusions of law in support of its restitution orders. Thereafter, the court entered written restitution orders of $10,000 for Liberty Mutual and $19,781.79 for the Hayden

---

[1]     The transcript of the final sentencing hearing is not in the appellate record. Mallory was responsible for providing a sufficient record to substantiate her arguments on appeal. *See Powell v. Sellers*, 130 Idaho 122, 127, 937 P.2d 434, 439 (Ct. App. 1997) ("It is the responsibility of the appellant to provide a sufficient record to substantiate their claims on appeal."). To the extent the sentencing hearing is relevant to the issues Mallory raises, we will presume the missing transcript supports the district court's actions. *See State v. Repici*, 122 Idaho 538, 541, 835 P.2d 1349, 1352 (Ct. App. 1992) (ruling missing transcript presumed to support district court's actions).

Lake Eagles.[2]  It also sentenced Mallory to a unified term of five years with one year determinate.

Mallory timely appeals the restitution orders.

## II.

## STANDARD OF REVIEW

Idaho Code Section 19-5304(2) authorizes a sentencing court to order a defendant to pay restitution for economic loss to the victim of a crime.  The decision of whether to order restitution, and in what amount, is within the discretion of a trial court, guided by consideration of the factors set forth in I.C. § 19-5304(7) and by the policy favoring full compensation to crime victims who suffer economic loss.  *State v. Richmond*, 137 Idaho 35, 37, 43 P.3d 794, 796 (Ct. App. 2002); *State v. Bybee*, 115 Idaho 541, 543, 768 P.2d 804, 806 (Ct. App. 1989).  Thus, we will not overturn an order of restitution unless an abuse of discretion is shown.  *Richmond*, 137 Idaho at 37, 43 P.3d at 796.  When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason.  *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).  "The determination of the amount of restitution is a question of fact for the trial court whose findings will not be disturbed if supported by substantial evidence."  *State v. Smith*, 144 Idaho 687, 692, 169 P.3d 275, 280 (Ct. App. 2007).

## III.

## ANALYSIS

Mallory argues the district court erred "when it awarded restitution above and beyond the burglary charge pertaining to the theft of a push lawn mower."  In support, Mallory attempts to distinguish this Court's opinion in *State v. Shafer*, 144 Idaho 370, 161 P.3d 689 (Ct. App. 2007).  In that case, Shafer's car collided with another vehicle.  *Id.* at 371, 161 P.3d at 690.  That vehicle was a total loss, and the driver suffered several injuries requiring medical attention.  *Id.*  The State charged Shafer with leaving the scene of an injury accident, and he pled guilty and agreed to pay restitution in an "amount to be determined."  *Id.*

---

[2]  By the time of sentencing, Mallory had already paid the restitution sought for the pawnshop.

5

At a proceeding to address restitution, the State submitted evidence showing the other driver suffered $18,013.95 in losses, which included the driver's medical bills and the replacement cost of the driver's vehicle. *Id.* Shafer objected, arguing those "damages were not attributable to the crime to which he had pleaded guilty--leaving the scene of the accident--but rather to the accident itself." *Id.* The district court agreed but found Shafer had consented to pay the damages attributable to the accident. *Id.*

On appeal, Shafer argued that the district court lacked authority to order restitution unrelated to the crime of leaving the scene of an accident and that he did not consent to pay the requested restitution. *Id.* This Court noted that "Idaho's restitution statute clearly permits restitution orders only for 'any crime which results in an economic loss to the victim,' I.C. § 19-5304(2), unless the parties consent to a broader restitution order" under I.C. § 19-5304(9). Accordingly, the Court ruled that "a defendant cannot be required to pay restitution for damages stemming from separate, uncharged and unproven crimes" unless "the parties have consented." *Shafer*, 144 Idaho at 372, 161 P.3d at 691.

Regarding Shafer's argument that he did not consent to paying restitution for damages stemming from the accident, the Court noted that "the pertinent term of Shafer's plea bargain was his agreement to pay restitution in an amount to be determined" and that plea agreements are contractual in nature and are generally examined in accordance with contract laws. *Id.* at 374, 161 P.3d at 693. The Court also noted that "generally, an agreement to pay restitution in a criminal case would probably be deemed to refer unambiguously to statutory restitution, i.e., those economic damages caused by the defendant's criminal conduct" but that in the "unique context of the crime of leaving the scene of an injury accident" "an agreement to pay restitution does not unambiguously refer only to any damages directly caused by leaving the scene, but may impliedly include the economic loss the victim suffered from the accident." *Id.* As a result, the Court concluded the restitution term in Shafer's plea agreement was ambiguous. *Id.*

Construing the ambiguous term in Shafer's plea agreement, the Court concluded substantial and competent evidence supported the district court's determination that the parties intended Shafer to pay the losses the other driver incurred in the accident. *Id.* In reaching this conclusion, the Court noted that "the very inclusion of the provision" in the plea agreement suggested both parties anticipated Shafer would pay restitution in some amount; Shafer received "an extremely lenient sentencing," indicating the payment of restitution was in consideration for

6

the State's concessions; and "Shafer did not contest the claimed restitution as a matter of law." *Id.* at 374-75, 161 P.3d at 693-94.

Mallory argues *Shafer* is distinguishable from this case because "the mere inclusion of a restitution term in the pretrial settlement offer does not suggest payment of alleged financial losses"; Mallory's sentence was "the opposite" of a "very lenient sentence"; and Mallory "protest[ed] the restitution issue multiples times." These arguments are unavailing. Most notably, Mallory fails to address the key fact that, during the May 2020 hearing, she expressly consented to the district court determining, as it stated, "the restitution amount for economic loss or injury for the Hayden Lake Eagles arising out of the conduct that was charged in the count in the complaint where they were named as the alleged victim" but which count had been dismissed.

After Mallory consented, nothing in the record indicates she ever asserted the district court lacked authority to order restitution for the Hayden Lake Eagles and Liberty Mutual related to the dismissed charge. Instead, Mallory proceeded to put on evidence at the evidentiary hearing to determine restitution and argued against restitution without raising the issue of lack of consent. Based on these facts, Mallory cannot now inconsistently argue on appeal that she did not consent to the court's restitution orders. *Cf. McCallister v. Dixon*, 154 Idaho 891, 894, 303 P.3d 578, 581 (2013) (noting judicial estoppel precludes party from taking one position and then subsequently taking an incompatible position). Furthermore, Mallory makes no argument and provides no citation to supporting authority that her express consent--in response to the court's specific inquiry--does not satisfy the requirement in I.C. § 19-5304(9) that the parties must consent to the court ordering restitution for crimes not adjudicated or not before the court.[3]

On reply, Mallory asserts the State's argument that she is "bound by her subsequent decision to leave her guilty plea intact and to proceed with the determination of the amount of restitution owed" "completely misinterprets" Mallory's position. She contends "this appeal concerns itself with only two questions: (1) Were the Eagles entitled to restitution for the

---

[3]      Moreover, Mallory's argument that the restitution term in the plea settlement offer does not suggest she agreed to pay restitution to the Hayden Lake Eagles is unpersuasive. As in *Shafer*, "the very inclusion of the provision" referencing the Hayden Lake Eagles in the offer suggested both parties anticipated Mallory would pay restitution in some amount to the Hayden Lake Eagles. *Shafer*, 144 Idaho at 374, 161 P.3d at 693.

dismissed charges; and, (2) Was the amount of restitution ordered correct." We disagree. Mallory never raised either of these issues in her opening brief, which focuses exclusively on whether this case is distinguishable from *Shafer* and whether Mallory consented to a restitution order for the Hayden Lake Eagles--without acknowledging her express consent given during the May 2020 hearing. Although Mallory's statement of issues presented on appeal does include whether substantial and competent evidence supported the court's "restitution order," Mallory neither provided argument nor supporting authority for this issue.

Because Mallory did not provide argument or authority for this argument and because she does not raise the issues of the Hayden Lake Eagles' "entitlement" to restitution and the appropriate amount of restitution, we decline to address these issues. *See State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (ruling party waives issue on appeal if either authority or argument is lacking); *Gallagher v. State*, 141 Idaho 665, 669, 115 P.3d 756, 760 (2005) (ruling arguments and authority on reply are inadequate to preserve issue). Likewise, we decline to address Mallory's remaining arguments asserted for the first time in reply, including that the district court abused its discretion by ordering restitution for Liberty Mutual and that Mallory's consent to the restitution orders was not voluntary, knowing, and intelligent. *See Gallagher*, 141 Idaho at 669, 115 P.3d at 760 (ruling arguments and authority on reply are inadequate to preserve issue).

Finally, we reject Mallory's assertion, raised for the first time during oral argument, that *State v. Hurles*, 158 Idaho 569, 349 P.3d 423 (2015), controls this case. In that case, Hurles pled guilty to grand theft for embezzling from her employer and agreed to pay restitution. *Id.* at 571, 349 P.3d at 425. At the plea hearing, the State and Hurles "had an understanding of the parameters of the restitution agreement," namely that the State would ask for restitution based on certain information disclosed in discovery. *Id.* at 574, 349 P.3d at 428. At the restitution hearing, however, the State introduced and relied on a spreadsheet, created by a third party who was involved in civil litigation related to Hurles' theft, for purposes of establishing the amount of restitution. *Id.* at 574-75, 349 P.3d 428-29. The district court based its restitution order on this spreadsheet rather than on the information produced in discovery as the parties had agreed. *Id.* at 575, 349 P.3d at 429.

At issue on appeal in *Hurles* was whether substantial and competent evidence supported the restitution award. *Id.* at 572, 349 P.3d at 426. The Idaho Supreme Court noted that "there

was no indication in the record that the parties agreed to modify the restitution agreement" by substituting the spreadsheet for the discovery information for purposes of determining the amount of restitution. *Id.* at 575, 349 P.3d at 429. The Court vacated the order and remanded the case "[b]ecause the proof presented to support the restitution order did not conform with the agreement made by the parties." *Id.* In reaching this conclusion, the Court ruled that "where an agreement has not been reduced to writing, and where the oral statements of that agreement on the record are insufficient to determine the intent of the parties, it may be necessary for the district court to make further factual findings concerning the terms of the agreement." *Id.* at 573-74, 349 P.3d at 427-28.

In accord with this rule in *Hurles*, the district court in this case clarified during the May 2020 hearing the parties' agreement. Specifically, the court concluded "there was not a meeting of the minds with regard to the restitution on the dismissed count" so "[t]here was no plea agreement"; the prosecutor stated she intended to "re-file the grand theft charge and seek restitution for the entire criminal conduct"; and after Mallory consulted with her attorney, he stated "we'll let the plea remain" and consent to the court determining restitution for the charge of burglary and "other charges that were dismissed." This exchange on the record was sufficient to establish an agreement between the parties that Mallory consented to the court ordering restitution for economic loss related to the dismissed grand theft charge.[4]

## IV.

## CONCLUSION

Contrary to Mallory's argument in her opening brief, the record clearly shows that she consented to the district court ordering restitution related to the charge of grand theft. Accordingly, we affirm those orders.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.

---

[4] To the extent Mallory's position taken during oral argument was that the district court was required to clarify her consent to the court ordering restitution for conduct related to the dismissed charge at the time of the plea hearing (versus during sentencing), the transcript of the plea hearing is not in the appellate record. The appellant has the responsibility to provide a sufficient record to substantiate her claims on appeal. *State v. Murinko*, 108 Idaho 872, 873, 702 P.2d 910, 911 (Ct. App. 1985). In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *State v. Beason*, 119 Idaho 103, 105, 803 P.2d 1009, 1011 (Ct. App. 1991).