337 P.2d 1

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Gordon LARSEN, Defendant-Appellant.**

**No. 8546.**

Supreme Court of Idaho.

Feb. 20, 1959.

Rehearing Denied April 2, 1959.

Vernon K. Smith, Boise, for appellant.

Graydon W. Smith, Atty. Gen., Eugene C. Thomas, Pros. Atty., Boise, J. R. Smead and T. J. Jones, III, Asst. Attys. Gen., for respondent.

McQUADE, Justice.

Gordon Larsen, age 32, the defendant herein, was charged with committing an infamous crime against nature following an alleged incident involving the defendant and one Eldon Halverson, age 21, occurring October 3, 1955, in the defendant's apartment in Boise.

The charging part of the information reads as follows:

"That the said defendant, Gordon Larsen, a male person in Ada County, Idaho, on or about the 3rd day of October, 1955, did then and there wilfully, unlawfully and feloniously commit the Infamous Crime Against Nature by then and there wilfully, unlawfully and feloniously taking into his, the said Gordon Larsen's mouth, the penis of one Eldon Halverson, a male human being, and then and there sucking the same."

At the time of the alleged offense, the defendant was divorced, and was employed as a produce salesman. When arrested, he was manager of the men's department of a Boise store. He was a veteran, and had attended the State university for two years. He was planning to be married.

The evidence showed a police officer contacted Larsen at his apartment December 11, 1955, and asked the defendant to go with him downtown. They went to the office of a special investigator, Bill Fairchild, the office being in Fairchild's home. Larsen was questioned by the investigator in the presence of the Ada County sheriff, the Boise police chief, and a police sergeant. The officers testified Larsen was told he was not under arrest, that he was free to leave, that he was entitled to have an attorney, and that his statements might be used against him. This was denied by Larsen.

The interview lasted from around 4 p. m. until 6:30 p. m. Larsen was questioned at length about activities of homosexuals in the city.

The defendant testified he told the officers he knew nothing about the matter. Halverson was then brought in. He identified the defendant, and told the officers he had had homosexual relations with Larsen in the latter's apartment. The defendant denied this, stating he did not know Halverson, but upon further questioning he admitted Halverson had been in the apartment with him.

The defendant was taken to the office of the Ada County prosecutor and was questioned further by the assistant prosecuting attorney. James Brandon, chief of police, who was present during this interview, testified Larsen at this time admitted the act. The assistant prosecutor, Eugene C. Thom-

as, wrote out a brief statement of the incident as follows:

"This statement was given voluntarily at room 103 Ada County on the evening of December 12, 1955, in the presence of Eugene C. Thomas, James Brandon and Bill Fairchild. It is made voluntarily, without promise or duress, and with the advice that it might be used against me and that I have a constitutional right to counsel. It is given voluntarily. At about noon on or about October 3, 1955, at my apartment in Boise Hills Village in Boise, Idaho I had a homosexual experience with Eldon Halverson wherein I recall taking his penis into my mouth and he took my penis into his. Neither of us had an orgasm. My name is Gordon Larsen and I reside at Boise Hills Village in Boise, Idaho. The time is 8:30 p. m."

At Larsen's request, another sentence was added:

"This incident involved 'playing around' and was not an attempt on my part to 'Blow' Halverson."

There was evidence at the trial the statement was wrongly dated, and was actually given December 11 instead of December 12, as specified therein. Larsen signed the statement, and Brandon and Thomas signed as witnesses. Larsen was taken before a committing magistrate around 9:30 p. m.

The trial brought out two sharply diverging accounts of the incident of October 3:

Halverson testified he first saw the defendant in a Boise bus depot. He said he talked to Larsen on a downtown street a few minutes later, and it was agreed the two men would meet at noon in a city park. At this meeting, Halverson said, Larsen asked him to follow the defendant to the latter's apartment. Halverson testified the men committed the act complained of in Larsen's bedroom.

Larsen himself testified Halverson, whom he did not know, engaged him in conversation on a downtown street and asked where he was going. Larsen replied he was going home for lunch. Then Larsen got into his car and Halverson, without any invitation or agreement, followed in his own automobile. Halverson followed Larsen into his apartment and talked while the defendant prepared and ate a sandwich and a glass of milk. After lunch, the defendant said, he went into his bedroom, and Halverson followed. He testified Halverson made an overture toward him, and the defendant ordered the younger man out of the apartment.

In his testimony, the defendant explained his written confession by stating he was afraid he would be arrested if he didn't cooperate with the officers, that the resulting publicity would cause him to lose his

job and his prospect for marriage, and that if he signed he believed the officers would let him go free, just as they had let Halverson.

The defendant was found guilty and was sentenced to serve not more than five years in the Idaho Penitentiary. This appeal is from the judgment and from denial of a motion for a new trial.

The appellant sets forth numerous specifications of error. The principal issues raised by the defendant, and those which this Court considers germane, are these:

1. Whether the offense here charged falls within the statutory definition of the infamous crime against nature, I.C. sec. 18-6605.

2. Whether the defendant's signed statement was properly admitted in evidence, and the jury properly instructed in regard thereto.

3. Whether the testimony of the accomplice, Eldon Halverson, is sufficiently corroborated.

4. Whether the trial court erred in permitting certain questions directed to the defendant by the prosecuting attorney.

5. Allegedly inflammatory remarks made by the prosecutor in his argument to the jury.

6. Sufficiency of the evidence as a whole to sustain conviction.

The defendant maintains the offense charged does not fall within I.C. sec. 18-6605:

"Every person who is guilty of the infamous crime against nature, committed with mankind or with any animal, is punishable by imprisonment in the state prison not less than five years."

The defendant maintains the statute does not define the crime, and at common law the offense did not include a sexual penetration per os, but only penetration per anus, and was equivalent to sodomy.

This Court dealt with this precise question in the case of State v. Altwatter, 29 Idaho 107, 157 P. 256, 257. After setting out sec. 6810 Rev.Codes, which is identical to our present I.C. sec. 18-6605, the Court said:

"The language of this statute clearly shows that it was not the intention of the Legislature to limit prosecutions to the crime of sodomy and to omit the inhibition and punishment of other infamous crimes against nature.

"The questions raised here have been passed upon by numerous appellate courts both in this country and in England. We feel disposed to follow the more modern decisions, which, while not so numerous, yet are, we think, the better reasoned, and in keep-

ing with the progress of civilization. * * *

" * * * we are of the opinion that section 6810 is sufficiently broad to include not only the crime of sodomy, but also all unnatural carnal copulations, whether with man or beast. * * *"

The Court followed this rule from the Altwatter case in State v. Wall, 73 Idaho 142, 248 P.2d 222. This principle has been rcognized in Idaho for more than 40 years, and we find the defendant's attempt to overturn it is not well founded.

 Turning to the question of the defendant's signed statement, the authorities of course are numerous as to the inadmissibility of a confession obtained by duress, either physical or mental. Here the statement was made after hours of questioning, but it must be borne in mind there is ample, though conflicting, evidence for the jury to conclude that when the defendant was taken to the Fairchild home he was told (1) he was not under arrest; (2) he was free to leave; (3) he was entitled to legal counsel; (4) his statements might be used against him. The jury was given adequate instructions which stated in substance that the confession might be considered only if the jury found it was made voluntarily by the defendant, without threats and without promise of reward or

immunity, and even if the jury so concluded, the confession alone would not support conviction, but it should be considered "along with all the other evidence in the case." We find no error in this regard. See authorities, infra.

 Likewise, the use of Halverson's testimony was safeguarded by instructions covering the necessity for corroboration of the testimony of an accomplice. As in other criminal proceedings, such corroboration is necessary in a case of this nature. I.C. sec. 19–2117; State v. Madrid, 74 Idaho 200, 259 P.2d 1044. The jurors were correctly instructed in substance that such testimony alone would not support a conviction, but there must be other evidence connecting the defendant with the crime, and this evidence might be furnished by the statements, admissions or confession of the defendant. This instruction is supported by the above authorities and by the case of State v. Brown, 53 Idaho 576, 26 P.2d 131, 135.

 Larsen made several inconsistent statements which, although slight, are circumstantial and tend to connect him with the crime.

" 'Where the circumstances point to the guilt of the accused, independent of the accomplice's testimony, such circumstantial evidence may be a sufficient corroboration of the accomplice's

testimony to sustain a conviction. It is not necessary that the testimony of an accomplice be corroborated in every detail. Any corroborative evidence legitimately tending to connect the defendant with the commission of a crime may be sufficient to warrant a conviction, although standing by itself it would not be sufficient proof of defendant's guilt.' " State v. Brown, supra.

■ There is marked conflict between the testimony of the defendant and of Halverson regarding the incident of October 3, and between the testimony of the defendant and of the law enforcement officers regarding circumstances surrounding the purported confession. These conflicts are for the jury to resolve; and where the evidence is in conflict but is sufficient to support a conviction, the verdict will not be disturbed. State v. Gilbert, 65 Idaho 210, 142 P.2d 584; State v. Kleier, 69 Idaho 278, 206 P.2d 513; State v. Eikelberger, 71 Idaho 282, 230 P.2d 696.

■ The appellant further urges there was error in the trial court's permitting certain questions directed to the defendant by the prosecuting attorney, and in allegedly inflammatory remarks by the prosecutor in his argument to the jury.

The questions dealt with matters opened up by defense counsel, and the defendant cannot now be heard to complain thereof.

"* * * The rule would seem to be well settled that where a defendant in a criminal trial voluntarily takes the witness stand in his own behalf he is subject to the same rules applicable to other witnesses and may be cross-examined in regard to all matters to which he has testified on his direct examination or connected therewith. * * *" State v. Hargraves, 62 Idaho 8, 107 P.2d 854, 858.

See also State v. Wilson, 41 Idaho 616, at pages 629–630, 243 P. 359; State v. Martinez, 43 Idaho 180, 195, 250 P. 239; State v. Mundell, 66 Idaho 297, at pages 306–308, 158 P.2d 818.

■ The arguments which the defense describes as inflammatory in effect urged the jurors to enforce the law and to halt an outbreak of homosexual practices in the city.

"The general rule is that argument by the prosecuting attorney merely urging the jurors in a criminal prosecution to do their duty, and to enforce the criminal law generally or the particular law under which the prosecution was instituted, does not constitute a ground for a new trial or a reversal but is within the range of proper

argument." Annotation, 78 A.L.R. 1438, Counsel's appeal to racial, religious, social, or political prejudices or prejudice against corporations as ground for a new trial or reversal, at page 1465.

"It has been held that reference by a prosecuting attorney in his argument in a criminal prosecution, to the prevalence of crime or of crime of the character of that for which the defendant is being tried, is not improper, and does not constitute a ground for a new trial or a reversal, where it is supported by evidence, or is based on matters of public notoriety, and is not a statement of a material substantive fact as to which there is no evidence." Ibid. at page 1467.

"In a criminal prosecution an attorney for the state properly may appeal to the jury to perform their full duty in enforcing the law, and in so doing may advance any legitimate considerations likely to instruct the jury in the performance of their duty and of the importance of enforcing the law, and may make remarks illustrating the evil consequences that might result from their failure to perform their duty; but he may not indulge in argument calculated to arouse in them fears of public disapproval, or of being regarded recreant in their duty, and

which on either account tends to coerce them into a verdict of conviction. * * * " State v. Pointer, 106 Or. 589, 213 P. 621, at page 626.

See also Henwood v. People, 57 Colo. 544, 143 P. 373, at page 383.

We have examined the remaining specifications of error advanced by the defendant, and find them to be without merit.

The judgment is affirmed.

PORTER, C. J., and TAYLOR and SMITH, JJ., concur.

KEETON, C. J., sat at the hearing but retired prior to decision.

On Petition for Rehearing.

McQUADE, Justice.

In the petition for rehearing, appellant urges a reversal because of what is termed impeaching examination of appellant by the prosecutor without adducing evidence in support thereof. Two objections were made during this examination: one that a particular question was incompetent, irrelevant, and no foundation laid, and later on a second objection that the testimony was beyond the scope of the direct examination, although admittedly invited by the direct examination of defendant. Both objections were overruled.

This Court has held that where impeaching questions are not objected to, and no adverse rulings obtained, there is no error. State v. Boyatt, 59 Idaho 771, 87 P.2d 992.

The petition for rehearing is denied.

PORTER, C. J., and TAYLOR and SMITH, JJ., concur.