# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48594

STATE OF IDAHO,                          )
                                         )
   Plaintiff-Respondent,                 )
                                         )          Boise, May 2021 Term
v.                                       )
                                         )          Opinion Filed: July 2, 2021
MARISSA SHANNEL DEMPSEY,                  )
                                         )          Melanie Gagnepain, Clerk
   Defendant-Appellant.                  )
_____  )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Elmore County. Nancy A. Baskin, District Judge.

The judgment of conviction is <u>affirmed</u>, the order of restitution is <u>affirmed</u> in part, and <u>reversed</u> in part, and the case is <u>remanded.</u>

Eric D. Fredericksen, State Appellate Public Defender, Boise, for appellant. Sally Cooley argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Mark Olson argued.

_____

BRODY, Justice,

In 2018, Marissa Shannel Dempsey was convicted by a jury of several counts of burglary, grand theft, and petit theft, after which the district court entered an order requiring Dempsey to pay restitution to the victims of the crimes. Dempsey appeals on three grounds. First, she argues that her conviction on one count of grand theft must be reduced to petit theft because conviction for grand theft required the State to prove the stolen property was worth more than $1,000, which she alleges the State failed to do. Second, Dempsey argues that the prosecuting attorney committed prosecutorial misconduct by making several improper statements during closing arguments that constituted fundamental error, thereby entitling her to a new trial. Finally, Dempsey argues that the district court erred in ordering restitution for several items stolen from the victims. With regard to certain jewelry, electronics, coin collections, and other property,

1

Dempsey contends the district court erred because the State failed to present substantial evidence to establish the market value of the property at the time of the crime. Regarding restitution for the cost to replace a stock certificate and three certified marriage certificates, Dempsey argues the district court erred because the victim had not actually incurred the cost of replacing the documents before sentencing. As set forth below, we affirm the judgment of conviction on all counts, but reverse the award of restitution in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

After a string of home break-ins in Elmore County in the spring of 2017, Dempsey was charged by information with eight counts of burglary, five counts of grand theft, and three counts of petit theft. Dempsey was tried on the charges over four days in June 2018.

The State's evidence against Dempsey included testimony from three witnesses who had seen Dempsey near the scene of the burglaries and later identified her in a photo lineup; evidence that some of the victims' property was found in Dempsey's car and a storage unit rented in her name; text messages indicating Dempsey had been in Elmore County on the day of several burglaries, despite her claim she had been in Boise; and evidence that Dempsey searched the internet for information about jewelry, locations of coin counting machines, and where to sell precious metals in Nampa and Boise on the same day she was alleged to have stolen jewelry, coins, and precious metals.

Further, in connection with the various counts of theft, victims testified about the property Dempsey was alleged to have stolen. Relevant on appeal, count XII of the information alleged Dempsey committed grand theft by taking property from the home of Joann Colwell, and Colwell testified that the missing property included jewelry, a jewelry box, family mementos, and a porcelain bowl. When asked by the State if she knew the value of the jewelry and mementos, Colwell initially responded, "[t]o me, priceless," but went on to testify, "6 to 10,000 [dollars] perhaps, I don't know." No further testimony was elicited from Colwell about the value of her stolen property during trial, though a list of Colwell's property recovered from Dempsey's storage unit was admitted as State's Exhibit 19.

Certain statements by the prosecuting attorney during closing arguments are also relevant on appeal. First, the prosecuting attorney discussed the impact of the crimes upon the victims, saying the victims are:

[i]nsecure in their own homes. Get emotional when they see pictures of what

2

happened to their home on the day of the burglary. You cannot recover irreplaceable family heirlooms that have been handed down through generations. And you are going to have feelings about that even if they aren't worth anything.

 . . . . The victims are never ever going to forget the day they walked into their homes and found out that they had been violated. Someone had gone in their inner sanctuary, in their bedroom, and stolen things of value, both monetary and worse, sentimental, irreplaceable items. They will never forget that. They will never stop double-checking their doors. They are never going to stop wondering why the garage door is open when they thought they shut it.

The prosecuting attorney then urged the jury to protect the community:

We need to protect the community. We need to protect this place we live and work in. We need to protect future potential victims. And we can do that. We are in a unique opportunity to hold someone accountable that will hopefully tell the rest of the county that this is not okay.

Further, in responding to Dempsey's closing argument, which suggested eyewitness identifications were unreliable because the detective conducting the photo lineup may have unwittingly influenced its results, the prosecuting attorney stated:

I frankly find it a little disturbing that Detective Parlin, who has explained to you his training and experience, is being accused of witness tampering. That he is being accused of pointing out whom he wants an eye witness to identify. And I find it disturbing that the three people, again, two of which had no dog in the fight whatsoever really, one that lost 20 bucks worth of coins, their honesty and their integrity who identified her from the lineup is being questioned.
I don't believe the evidence showed that all four of those people are lying about that eye witness [sic] identification.

As discussed below, Dempsey alleges on appeal that several of the statements above were improper and amount to prosecutorial misconduct; however, she did not raise any objection to the prosecutor's closing argument at trial.

The jury found Dempsey guilty on all counts. In September 2018, the district court sentenced Dempsey to ten years, with five years determinate, for each count of burglary; fourteen years, with five years determinate, for each count of grand theft; and one year for each count of petit theft, with all of the sentences to run concurrently. At the sentencing hearing, the State also informed the district court that it intended to seek restitution for the victims.

Restitution for some victims was based on stipulations by the parties. For several more victims, the district court determined the amount of restitution due after taking testimony at hearings in November and December 2018. Based on the evidence submitted at trial and during

the restitution hearings, the district court awarded the following in restitution: $13,684 to Joann Colwell (later reduced by $500 because some property was returned); $10,274 to Christie Batruel and Tony Ullrich; $11,511.06 to Sharon Grinde-Ash; and $84,000 to Yuki Cook.

The award to Colwell included restitution for stolen cash, jewelry, and other items, as well as $1,135 for the cost to replace a stolen stock certificate and three certified marriage certificates. Colwell testified at the restitution hearing that while she still owned her stocks, she needed the certificate to be able to sell them and it would cost $1,000 to have the certificate reissued. Likewise, Colwell testified that the cost to obtain new certified copies of her marriage certificate was $135. Colwell's testimony indicated she had not replaced the stock certificate at the time of the restitution hearing; as to the marriage certificates, no testimony or other evidence indicated whether they had been replaced or not.

The award to Batruel and Ullrich included restitution for jewelry, replacement locks for their doors, and $2,520 for two stolen smartphones, a tablet, and a laptop computer. As to the jewelry, Batruel testified that she had determined its value by researching similar items on the internet. However, she only provided the district court with evidence of the price she originally paid for the electronics ($3,150 in total), which were approximately one year old when they were stolen. After an exchange with both parties about the proper valuation of the electronics, the district court determined it would award restitution for the electronics, but would deduct 20 percent from their purchase price to account for depreciation.

The award to Grinde-Ash included restitution for stolen cash, watches and gold chains, luggage, silver bars, and $6,261.06 for several items of diamond jewelry purchased between 2002 and 2010. Grinde-Ash testified that the jewelry was in like-new condition and provided receipts showing the price paid for each item, as well as a higher "retail value" for each piece of jewelry. Grinde-Ash testified she believed the retail value on the receipts reflected the market value of the jewelry when it was stolen, though she had not actually determined current prices for any of the stolen pieces. She also testified that she "looked up" the value of diamonds and that they had increased in value since the pieces were purchased.

Finally, the award to Cook, included restitution for jewelry, significant amounts of paper cash (both dollars and yen), as well as $10,000 for a Japanese coin collection, $10,000 for an American coin collection, $450 for five bottles of perfume, and $3,500 for a vintage Chanel purse. As to the coin collections, Cook testified that some coins were old, while some were not;

4

that at least one of the collections was contained within a "small clutch handbag"; that she did not know if any of the coins were made of precious metals; that some of the coins were American 50 cent pieces; that none of the coins were rolled; but that she believed each collection was worth $10,000. As to the five bottles of perfume, Cook testified that each bottle was worth $100. However, Cook acknowledged that three bottles were opened and she could not estimate how much perfume was left in each when they were taken. As to the Chanel purse, Cook testified at the hearing that she believed the purchase price of the purse was about $3,500. However, trial testimony from Cook's daughter also addressed the value of the purse. Specifically, in response to a question about the value of the purse, Cook's daughter testified, "Yeah. I actually looked it up. It is worth 3,500."

Dempsey timely appealed from her convictions and the awards of restitution. In an unpublished opinion, the Court of Appeals vacated Dempsey's conviction as to count XII, grand theft; affirmed conviction on all other counts; vacated the order of restitution as to the award to Yuki Cook for loss of her coin collections and open bottles of perfume; and affirmed the remainder of the order of restitution. Dempsey then filed a petition for review with this Court, which we granted.

## II.  STANDARD OF REVIEW

"In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court." *State v. Hurles*, 158 Idaho 569, 572–73, 349 P.3d 423, 426–27 (2015) (citing *State v. Schall,* 157 Idaho 488, 491, 337 P.3d 647, 650 (2014)).

"This Court will uphold a judgment of conviction entered upon a jury verdict so long as there is substantial evidence upon which a rational trier of fact could conclude that the prosecution proved all essential elements of the crime beyond a reasonable doubt." *State v. Tryon,* 164 Idaho 254, 257, 429 P.3d 142, 145 (2018) (quoting *State v. Kralovec*, 161 Idaho 569, 572, 388 P.3d 583, 586 (2017)). "Substantial and competent evidence exists if there is evidence in the record that a reasonable trier of fact could accept and rely upon in making the factual finding challenged on appeal." *State v. Ish*, 166 Idaho 492, 509, 461 P.3d 774, 791 (2020).

"[T]he standard of review governing claims of prosecutorial misconduct depends on whether the defendant objected to the misconduct at trial." *State v. Severson*, 147 Idaho 694, 715, 215 P.3d 414, 435 (2009). "[W]hen an objection to prosecutorial misconduct is not raised at trial,

the misconduct will serve as a basis for setting aside a conviction only when the 'conduct is sufficiently egregious to result in fundamental error.' " *Id.* (quoting *State v. Porter,* 130 Idaho 772, 785, 948 P.2d 127, 140 (1997)).

" 'The decision regarding whether to order restitution, and in what amount, is within the district court's discretion,' guided by factors in Idaho Code section 19-5304(7)." *Hurles*, 158 Idaho at 573, 349 P.3d at 427 (quoting *State v. Corbus,* 150 Idaho 599, 602, 249 P.3d 398, 401 (2011)). "The determination of the amount of restitution is a question of fact for the trial court whose findings will not be disturbed if supported by substantial evidence." *Id.* (citing *State v. Lombard,* 149 Idaho 819, 822, 242 P.3d 189, 192 (Ct.App.2010)).

## III. ANALYSIS

### A. Dempsey's conviction on count XII was supported by substantial and competent evidence.

Count XII of the information alleged Dempsey was guilty of grand theft for stealing jewelry and other property from the home of Joann Colwell and the jury convicted Dempsey on this charge. Theft is divided into two degrees in Idaho: grand theft (a felony) and petit theft (a misdemeanor). I.C. §§ 18-2407, 18-2408. All thefts are petit theft, unless the State can prove one or more enumerated criteria have been satisfied that elevate petit theft to grand theft. I.C. § 18-2407(2). Theft of property with a value greater than $1,000 is one of these criteria. I.C. § 18-2407(1)(b)(1). If the value of stolen property cannot be satisfactorily ascertained, it is "deemed to be one thousand dollars ($1,000) or less." I.C. § 18-2402(11)(c).

Dempsey argues the State failed to present sufficient evidence to support conviction on count XII because the only evidence showing the stolen property exceeded $1,000 in value was Colwell's testimony that the jewelry was worth "6 to 10,000 [dollars] perhaps, I don't know[,]" which Dempsey characterizes as a "guess." Because Dempsey alleges this testimony was insufficient to establish beyond a reasonable doubt that the property was worth more than $1,000, she maintains her conviction on count XII must be reduced to a misdemeanor. The State responds that the evidence was sufficient to support conviction because an owner is competent to testify to the value of her property, and the low end of Colwell's estimate was six times the threshold for grand theft. Further, the State maintains that Colwell's testimony is not the only evidence supporting conviction because exhibit 19 supports an inference that the property stolen was worth more than $1,000.

6

When reviewing the sufficiency of evidence for a conviction on appeal, "the Court is required to consider the evidence in the light most favorable to the State, and will not substitute its judgment for that of the jury on issues of witness credibility, weight of the evidence, or reasonable inferences to be drawn from the evidence." *State v. Gomez-Alas*, 167 Idaho 857, 915, 477 P.3d 911, 915 (2020) (quoting *State v. Taylor*, 157 Idaho 186, 190, 335 P.3d 31, 35 (2014)). Applying this standard, we agree that the evidence was sufficient to support conviction on count XII.

Despite Dempsey's characterization of Colwell's testimony as a guess, she did not object to the testimony at trial for lack of foundation, nor cross-examine Colwell about her estimate of her property's value. Further, as the State has argued, owners are generally deemed competent to testify to the value of their property. *See Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 21, 278 P.3d 415, 423 (2012) (citing *Empire Lumber Co. v. Thermal–Dynamic Towers, Inc.,* 132 Idaho 295, 306, 971 P.2d 1119, 1130 (1998)). Certainly, without information about how an owner knows the value of her property, her testimony on the matter may be of limited probative value. However, exhibit 19 was also in evidence and we need not consider whether Colwell's testimony, considered in isolation, would have been sufficient to support conviction on count XII.

Exhibit 19 lists 163 items belonging to Colwell, mostly jewelry, that were recovered from Dempsey's storage unit. Though the exhibit does not list values for the jewelry, it does contain brief descriptions of each item from which inferences about value may be drawn. Further, given the large number of items, the average value sufficient to meet the $1,000 grand theft threshold is quite low—a little more than six dollars per item. It is true that some items are not likely to have significant market value (e.g. "plastic swallow broach"). However, many more are likely to have significant value (e.g., "silver flower broach," "gold chain," five pairs of "gold w/pearl earrings," five pairs of "silver w/onyx earrings"). We hold that a juror considering Colwell's testimony in conjunction with the extensive list of items in exhibit 19 could reasonably conclude that Colwell's stolen property was worth more than the $1,000 required to convict Dempsey of grand theft. Therefore, the evidence was sufficient to support Dempsey's conviction on count XII.

### B. Though certain comments by the prosecuting attorney were improper, Dempsey has not demonstrated fundamental error entitling her to a new trial.

Dempsey argues she is entitled to a new trial because of prosecutorial misconduct. We

analyze Dempsey's argument in two steps. First, we consider if any of the statements she challenges were improper and thus constituted misconduct. If so, we consider whether the misconduct entitles her to a new trial.

1. <u>Whether the prosecuting attorney made improper statements during closing arguments and rebuttal.</u>

Dempsey argues that a number of statements by the prosecuting attorney during closing arguments and rebuttal were improper and that she is entitled to a new trial as a result. Namely, Dempsey alleges the prosecuting attorney committed misconduct by:

- bolstering the credibility of certain State's witnesses through statements that they had "no dog in the fight";
- injecting her personal opinion into arguments by telling jurors "I don't believe the evidence showed that" witnesses had lied;
- injecting her personal opinion into arguments by stating "I find it a little disturbing" Dempsey would accuse a detective of "witness tampering" during a photo lineup;
- mischaracterizing the defense's argument regarding the photo lineup; and
- appealing to the passions of the jury by highlighting the emotional impact of the crimes on the victims and telling the jury it needed to convict Dempsey to "protect the community," "protect this place we live and work in," and "protect future potential victims."

The State acknowledges that the prosecuting attorney's first-person comments were ill-advised, but contends they were not improper because they were not intended to exploit the weight of the prosecuting attorney's office to improperly influence the jury. Further the State argues that the prosecuting attorney's remaining comments were not misconduct because they were tied to the evidence and "[t]he prosecutor did not expressly argue that the jury should convict on any improper basis."

It is misconduct for a prosecuting attorney to "attempt[] to secure a verdict on any factor other than the law as set forth in the jury instructions and the evidence admitted during trial." *State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979. Prosecuting attorneys have a duty to avoid using "unnecessarily inflammatory" rhetoric in closing arguments, which may encourage the jury to render a verdict based on emotion rather than evidence. *State v. Moses*, 156 Idaho 855, 871, 332 P.3d 767, 783 (2014) (citing *State v. Griffiths,* 101 Idaho 163, 166, 610 P.2d 522, 525 (1980)). Likewise, prosecuting attorneys should be cautious not to inject their personal beliefs and opinions into arguments. *State v. Pizzuto*, 119 Idaho 742, 753, 810 P.2d 680, 691

8

(1991), *overruled on other grounds by State v. Card*, 121 Idaho 425, 825 P.2d 1081 (1991) (citing *State v. Garcia*, 100 Idaho 108, 594 P.2d 146 (1979)). This includes comments about the credibility of witnesses that are not "based solely on inferences from evidence presented at trial." *State v. Herrera*, 164 Idaho 261, 274, 429 P.3d 149, 162 (2018). Prosecuting attorneys should avoid such statements because "personal expressions by the prosecutor involve a form of unsworn, unchecked testimony, tend to exploit the influence of the office, and undermine the objective detachment which should separate a lawyer from the case which he argues." *Garcia*, 100 Idaho at 111, 594 P.2d at 149.

We begin by rejecting Dempsey's argument that the prosecuting attorney impermissibly bolstered the credibility of witnesses by stating they had "no dog in the fight." Though it may not be strongly probative of credibility, it is not improper in a prosecution for theft to point out that a witness is not personally a victim of the theft, so long as the evidence supports the statement. Here, the evidence supported the argument that the relevant witnesses' own property had not been stolen and it was therefore proper to bring this fact to the jury's attention.

However, we agree with Dempsey that the prosecuting attorney's statements of personal opinion were improper. As to the comment she "believe[d] the evidence showed" certain witnesses were credible, we observe there is little practical difference between a statement that begins "the evidence shows [X]" and a statement that begins "*I believe* the evidence shows [X]." In the former, the prosecuting attorney's opinion is implicit (because, presumably, she would not say the evidence shows something that she does not believe it shows), while in the latter, the prosecuting attorney's opinion is explicit. Nevertheless, there is nothing to be gained from a first-person expression of this sort, and it is best avoided. *See State v. Phillips*, 144 Idaho 82, 87 n.1, 156 P.3d 583, 588 n.1 (Ct. App. 2007) (citing *State v. Rosencrantz*, 110 Idaho 124, 131, 714 P.2d 93, 100 (Ct.App.1986) ("The safer course is for a prosecutor to avoid the statement of opinion, as well as the disfavored phrases "I think" and "I believe" altogether.").

More troubling is the prosecuting attorney's contention it was "disturbing" Dempsey had accused police of "witness tampering." To begin, Dempsey did not argue that police had "tampered" with witnesses; she argued that the detective conducting the photo lineup may have unconsciously affected the results because he knew which photo depicted Dempsey as he showed them to witnesses. To cast this as an accusation of witness tampering was an inaccurate and inflammatory framing of Dempsey's argument. Further, it was plainly improper for the

prosecuting attorney to offer that she was "disturbed" by Dempsey's argument. At best, the statement was irrelevant because an attorney's opinion about an opposing party's argument is plainly not evidence. At worst, it is an invitation for the jury to take umbrage, too, and render a decision based on emotion rather than reason.

Likewise, we hold it was improper for the prosecuting attorney to emphasize the suffering of the victims and urge the jury to "protect the community" and "future potential victims" by convicting Dempsey. Certainly, concern for victims' rights and a safe society are at the bedrock of our criminal justice system. However, a jury's role within our system is to render a verdict solely upon the evidence before it. Here, the prosecuting attorney's comments did not pertain to any evidence of Dempsey's guilt or innocence. Though we acknowledge the harmful effect of the crimes on the victims, the fact and degree of their suffering does not bear on whether Dempsey is the one responsible for causing it. Nor does the laudable desire to protect the community from crime have anything to do with whether Dempsey committed these particular crimes. As such, these comments could only distract the jury from its duty and were improper.

We note that our holding above mirrors the holding of the Court of Appeals in *State v. Beebe*, 145 Idaho 570, 576, 181 P.3d 496, 502 (Ct. App. 2007). In that case, the defendant was accused of attempting to rob a convenience store. *Id.* at 572, 181 P.3d at 498. In closing arguments, the prosecuting attorney told the jury that "one of the concerns we have in a criminal case is protecting the public"; that the store clerk had "a right to be able to go to work and not . . . [be] afraid [of] what is going to happen"; and that the store owners had "a right to know that their money is safe[.]" The Court of Appeals held these comments were improper because "concerns to protect the public and the rights of the victims" are "factors other than the evidence admitted at trial" and therefore "outside the boundaries of proper closing argument." *Id.* at 570, 576, 181 P.3d at 502. Further, our holding is consistent with the approach taken by many other jurisdictions. *See, e.g.*, *United States v. Weatherspoon*, 410 F.3d 1142, 1149 (9th Cir. 2005) ("A prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking. The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence."); *State v. Townsend*, 2021 S.D. 29, ¶ 29, ___ N.W.2d ___, ___ (S.D. 2021) ("[Arguments that] ask the jury to place themselves in the shoes of the victim or make an appeal

10

to the jury to protect the community" are improper); *Hill v. State*, 371 P.3d 553, 565 (Wyo. 2016) ("It is improper for a prosecutor to encourage the jury to convict a defendant in order to protect the community rather than upon the evidence presented at trial."). However, in *State v. Larsen*, 81 Idaho 90, 337 P.2d 1 (1959), which is this Court's only decision directly addressing the question, we held that it was not improper for a prosecuting attorney to "urge[] the jurors to enforce the law and to halt an outbreak" of crime by convicting the defendant. *Id.* at 99, 337 P.2d 6. To the extent the decision *Larsen* is inconsistent with our holding today, it is disavowed.

  2.  Whether Dempsey is entitled to a new trial as a result of the prosecuting attorney's misconduct.

When a defendant has not made an objection to prosecutorial misconduct at trial, "the misconduct will serve as a basis for setting aside a conviction only when the conduct is sufficiently egregious to result in fundamental error." *State v. Folk*, 162 Idaho 620, 632, 402 P.3d 1073, 1085 (2017) (quoting *Severson*, 147 Idaho at 716, 215 P.3d at 436 (2009)). "Prosecutorial misconduct during closing arguments will constitute fundamental error only if the comments were so egregious or inflammatory that any consequent prejudice could not have been remedied by a ruling from the trial court informing the jury that the comments should be disregarded." *State v. Lankford*, 162 Idaho 477, 497, 399 P.3d 804, 824 (2017) (quoting *State v. Parker*, 157 Idaho 132, 146, 334 P.3d 806, 820 (2014)). "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

Factors that are considered in determining whether misconduct during closing arguments rises to this level include whether a prosecuting attorney's improper argument has "manipulate[d] or misstate[d] the evidence," *Darden*, 477 U.S. at 181–82; whether it "implicate[d] other specific rights of the accused such as the right to counsel or the right to remain silent," *id.*; whether the defendant had an opportunity to respond to the improper statements, *id.* at 182; and whether the improper statements were "dwelled upon or made in support of an argument that [the defendant] receive a harsher punishment." *State v. Garcia*, 166 Idaho 661, 678, 462 P.3d 1125, 1142 (2020).

We do not find the prosecuting attorney's improper statements so "infected the trial with unfairness" that they rise to fundamental error. *Lankford*, 162 Idaho at 497, 399 P.3d at 824. The district court instructed the jury that it was to reach a verdict based on the evidence before it, and

11

that the arguments of the attorneys were not evidence:

> [I]t is your duty to decide what the facts are and to apply those facts to the law that the [c]ourt gives you. You are to decide the facts from all the evidence presented in the case.
>
> The evidence you are to consider consists of, one, sworn testimony of witnesses; two, exhibits which have been admitted into evidence; and three, any facts to which the parties have stipulated.
>
> Certain things you have heard or seen are not evidence, including, one, arguments and statements by lawyers. The lawyers are not witnesses. What they say in their ... closing arguments and at other times is included to help you interpret the evidence, but it is not the evidence.

Further, while the prosecuting attorney's statements were improper, we find that they were not so egregious or inflammatory that the district court's admonition to reach a verdict solely upon the evidence could not cure the error.

In sum, while we hold that some of the prosecuting attorney's closing argument was improper, this alone is not dispositive. "In reviewing allegations of prosecutorial misconduct the Court must keep in mind the realities of trial. A fair trial is not necessarily a perfect trial." *State v. Garcia*, 166 Idaho 661, 677, 462 P.3d 1125, 1141 (2020) (quoting *State v. Miller*, 165 Idaho 115, 123, 443 P.3d 129, 137 (2019)). Dempsey may not have received a perfect trial, but she has not shown she received an unfair one. Thus, she is not entitled to a new trial.

**C. The district court erred in awarding restitution to Cook for her stolen coin collections and perfume and erred in awarding restitution to Colwell for the replacement cost of her stock and marriage certificates.**

Following conviction, the district court ordered Dempsey to pay restitution to several victims. Of these, Dempsey alleges the district court erred regarding restitution in favor of Joann Colwell, Yuki Cook, Sharon Grinde-Ash, Christie Batruel, and Tony Ullrich. As to $1,135 in restitution to Colwell for the cost to replace a stolen stock certificate and three certified marriage certificates, Dempsey argues the district court erred by ordering restitution for "future losses," which are not compensable under the restitution statute. As to $2,520 in restitution to Batruel and Ullrich for electronic devices, $6,261.06 to Grinde-Ash for jewelry, and $23,750 to Cook for a designer handbag, two bags of coins, and five bottles of perfume, Dempsey argues the district court erred in awarding restitution that was not supported by competent and substantial evidence.

The State concedes that the district court erred, in part, in its award to Cook. With regard to $20,000 for the stolen coins, the State acknowledges that Cook could "only vaguely describe what the property even was." With regard to $250 for three bottles of perfume, the State

acknowledges the bottles had been opened and Cook could not estimate how much perfume had been used. Thus, the State agrees with Dempsey that substantial evidence did not support $20,250 of the award to Cook. As such, we reverse this portion of the restitution order without further discussion. However, the State argues all other portions of the restitution order were proper.

      1.  <u>Applicable law.</u>

Idaho Code section 19-5304 provides that restitution to victims of a crime "shall be ordered for any economic loss which the victim actually suffers," unless in consideration of "the amount of economic loss sustained by the victim . . . the financial resources, needs and earning ability of the defendant, and such other factors as the court deems appropriate," the court determines restitution would be "inappropriate or undesirable." I.C. § 19-5304(2), (7). As used in section 19-5304, economic loss is defined as "includ[ing], but not limited to, the value of property taken, . . . lost wages, and direct out-of-pocket losses or expenses . . . resulting from the criminal conduct, but does not include less tangible damage such as pain and suffering, wrongful death or emotional distress." I.C. § 19-5304(1)(a). "Value," in turn, is defined as "the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime." I.C. §§ 19-5304(1)(c), 18-2402(11). To establish the amount of an economic loss, the State must prove value by a preponderance of the evidence. I.C. § 19-5304(6).

      2.  <u>The district court erred in awarding $1,135 to Colwell for the cost to replace her stock and marriage certificates.</u>

Dempsey argues that the district court erred by awarding restitution to Colwell for the cost of replacing stolen stock and marriage certificates because no evidence shows Colwell replaced these items before Dempsey was sentenced. Specifically, Dempsey contends that Colwell's losses were prospective, and may not be awarded under this Court's decision in *State v. Straub*, 153 Idaho 882, 292 P.3d 273 (2013). The State contends the district court did not err because there is no requirement in the restitution statute that a person actually replace stolen property in order for restitution to be awarded.

In *Straub*, the defendant pleaded guilty to vehicular manslaughter and was ordered to pay restitution to the decedent's widow. 153 Idaho at 887–88, 292 P.3d at 278–79. The restitution award included an amount representing the widow's community share of the decedent's

13

anticipated wages for the next five years and an amount representing three years of family medical insurance premiums that would have been paid by the decedent's employer if he were alive. *Id.* The defendant did not challenge a portion of the restitution award representing premiums already paid by the widow at the time of sentencing, but he did challenge the award as to unpaid future premiums. *Id.* This Court reversed the award of restitution, except as to the insurance premiums already paid. *Id.* at 890, 292 P.3d at 281. We observed that while the restitution statute allows victims to recover certain expenses resulting from a defendant's criminal conduct, "[t]he restitution statute was never meant to be a substitute for a civil action." *Id.* Because the statute only provides that "[r]estitution shall be ordered for any economic loss which the victim *actually suffers*," we held that recovery for out-of-pocket expenses resulting from a crime is limited to expenses actually incurred at the time of sentencing. *Id.* at 889, 292 P.3d at 280 (emphasis added).

Here, the State is correct that there is no requirement a victim replace stolen property in order to be awarded restitution for the value of the property. However, the issue in this case is not whether the *value* of the stolen property may be recovered, but whether *expense* incurred in replacing the property may be recovered. Under our decision in *Straub* the answer is clear: the expense may not be recovered if not incurred before sentencing. Though Colwell testified she intended to replace her property "when this is finally over," no evidence supports that she actually replaced the certificates before Dempsey was sentenced. Thus, the district court erred in awarding restitution to Colwell for the cost of replacing these items.

A hypothetical example illustrates the flaw in the State's argument. If, for instance, a perpetrator steals a fisherman's boat worth $5,000, the fisherman may recover the $5,000 value of the boat under the restitution statute, even if he chooses to retire and never replaces the boat. This is reasonable because even if he no longer needed the boat, he could sell it to someone else and obtain its $5,000 value. On the other hand, if he chooses to continue fishing, he may have to incur the cost of a sales commission to buy a new boat from a dealer. It is beyond the scope of this decision whether a commission on replacement property is an out-of-pocket expense generally recoverable under the restitution statute. However, assuming that it is, *Straub* makes clear it would not be recoverable (in a criminal restitution proceeding, at least) unless the expense were incurred before sentencing.

14

3. The district court did not err in awarding $3,500 to Cook for the loss of her Chanel purse.

Because Cook's Chanel purse was ten years old when it was stolen and she testified she paid "around $3,500" for it at the restitution hearing, Dempsey maintains the evidence only established the purse's purchase price and there was not competent evidence of its market value. However, the State points out that Cook's testimony was not the only evidence relevant to the market value of the purse. Rather, Cook's daughter testified at trial about her own inquiry into the purse's value and that she concluded it was worth $3,500. Thus, substantial evidence supports the district court's award of restitution for the purse. *See State v. Blair*, 149 Idaho 720, 723, 239 P.3d 825, 828 (Ct. App. 2010) (holding that evidence to support a restitution award need not be introduced at a restitution hearing where evidence at trial is sufficient to establish the amount of restitution due).

4. The district court did not err in awarding restitution to Grinde-Ash because her testimony supported that, at the time of the crime, the market value of her jewelry was greater than its purchase price.

Dempsey argues that the district court erred in awarding $6,261.06 in restitution to Grinde-Ash for certain stolen jewelry because the district court's award corresponded to the purchase price of the jewelry, yet none of the jewelry was new at the time of the theft. The State argues that the district court did not err because the jewelry's purchase price represented a "conservative estimate" of its market value. In support, the State argues that the purchase price of the jewelry had been discounted below retail price because Grinde-Ash's husband was a frequent jewelry store customer. Further, the State notes that Grinde-Ash testified the jewelry was in like-new condition and asserts that "jewelry is not likely to depreciate in value in the same manner, as for example, consumer electronics—and may even appreciate in value."

To the extent the State argues the purchase price paid by Grinde-Ash's husband was less than market value because it was less than the "retail price" printed on the receipts, this argument is not supported by the evidence. While the State asserts that Grinde-Ash's husband paid less than retail because he was a frequent customer of the store, Grinde-Ash's testimony only establishes that he received gift certificates as a reward for his loyalty—not that he paid lower prices for jewelry than anyone else. As such, the "retail value" printed on the receipts is as likely to be a jewelry store marketing technique as a true reflection of market value. Moreover, the restitution statute directs courts to consider the "market value of the property *at the time and*

15

*place of the crime*." I.C. §§ 19-5304(1)(c), 18-2402(11) (emphasis added). Because all the jewelry had been purchased years before it was stolen, neither purchase price nor retail value—without something more—would be sufficient to support the district court's award.

However, Grind-Ash's testimony provides the "something more" required; thus, we hold the district court did not err in awarding the jewelry's purchase price. Notably, we need not assume, as the State suggests, that jewelry does not depreciate like other goods; rather, Grinde-Ash's testimony affirmatively supports that the value of her jewelry had appreciated. All the items underlying the $6,261.06 Dempsey challenges were pieces of diamond jewelry and Grinde-Ash testified that she "looked up the ongoing rate" of diamonds before the restitution hearing. Grinde-Ash testified that diamonds had appreciated significantly since the jewelry had been purchased. This evidence, along with the testimony that the jewelry was in like-new condition, supports that it was worth at least as much at the time of the theft as when it was purchased. Therefore, the district court did not err in awarding restitution in an amount that corresponded to the purchase price.

5. The district court did not err in awarding restitution to Batruel and Ullrich for their stolen electronics because the parties invited the district court to estimate an appropriate rate of depreciation.

Finally, Dempsey argues that the district court erred in awarding restitution to Batruel and Ullrich for two smartphones, a tablet, and a laptop computer, which were all about one year old when they were stolen. In particular, Dempsey argues the district court erred because there was no evidence presented about market value for the items, and the district court's decision to determine market value by deducting 20 percent from the purchase price was a "guess" not supported by substantial evidence. The State responds that "the district court was entitled to consider [purchase price] as a starting point in calculating an appropriate restitution award," and that the restitution statute allows the district court "broad discretion" in determining the amount of restitution. Further, the State contends that the statute does not require "expert testimony or detailed evidence regarding depreciation rates." Therefore, the State maintains the district court did not err by estimating depreciation.

We are unconvinced by the State's argument that it was within the district court's discretion to determine an amount of depreciation without evidence regarding the rate of depreciation. While the State is correct that the restitution statute permits district courts discretion in whether to order restitution and its amount, it lists factors courts are to consider in

16

exercising that discretion. *See* I.C. § 19-5304(7). Failure to present evidence necessary to accurately determine market value is not a listed factor. Nor are we inclined to hold that the failure to present evidence is a factor a court may "deem[] appropriate" under the statute. Moreover, nothing suggests, as the State's argument implies, that it would have been unduly burdensome to present evidence of market value for the electronics. Indeed, $7,754 of the award to Batruel and Ullrich for the loss of other property was supported by testimony from Batruel that she had estimated the market value of the other property by "Googl[ing] similar items[.]" Dempsey did not challenge the competency of Batruel's Googled estimate of the value of the other property, and we doubt that similar evidence of the market value of the electronics was unavailable.

However, we do not reverse the award of restitution for the electronics because the district court calculated depreciation at the request of the parties. Following Batruel's testimony, the State conceded that the market value of the electronics was the correct measure of restitution, yet it had only presented evidence of purchase price. It then invited the district court to determine an appropriate amount of depreciation for itself:

> THE COURT: "What depreciation value do you expect the [c]ourt to take without any information presented regarding deprecation for one-year-old electronic[s]?"

> PROSECUTOR: "I understand that is a difficulty in this situation and I would simply submit to the court on that without any further argument."

Likewise, Dempsey's counsel acknowledged the State's proof was insufficient to establish market value:

> [As to the] electronics, it makes it much more difficult for all of us because we don't really have anything to base this on other than the original prices and just general knowledge of the markets for these items, that they lose a substantial amount of their value during the first year after they are purchased and put into service.

However, Dempsey did not object to the State's invitation for the district court to estimate depreciation. To the contrary, Dempsey's counsel stated he "would leave it in the discretion of the [c]ourt what amount to award." Thus, the parties stipulated to accept a depreciation rate determined by the district court. Inasmuch as Dempsey complains the district court erred to accept this stipulation, the error, if any, was invited. Therefore, she may not complain of it now. *See Thomson v. Olsen*, 147 Idaho 99, 106, 205 P.3d 1235, 1242 (2009) ("The doctrine of invited error applies to estop a party from asserting an error when his own conduct induces the

17

commission of the error.").

## IV. CONCLUSION

For the reasons above, the judgment of conviction is affirmed on all counts. The district court's order of restitution is reversed as to $20,250 to Yuki Cook for the loss of her coin collections and her open bottles of perfume. The order of restitution is further reversed as to $1,135 to Joann Colwell for the replacement cost of her stock and marriage certificates. The remainder of the award of restitution is affirmed. The case is remanded for further proceedings consistent with this opinion.

Chief Justice BEVAN, and Justices BURDICK, STEGNER, and MOELLER CONCUR.